Board of Tax and Land Appeals
No. 86-167

APPEAL OF MICHAEL D. CANNATA, JR. & a.

(New Hampshire Board of Tax and Land Appeals)

June 5, 1987

*Daniel D. Crean*, of Concord, by brief and orally, for the plaintiffs, Michael D. Cannata, Jr., and Linda J. Cannata.

*Grinnell & Bureau*, of Derry (*David R. Connell* on the brief and orally), for the Town of Deerfield.

BATCHELDER, J. The Cannatas (hereinafter taxpayers) appeal from an order of the board of tax and land appeals pursuant to RSA 76:16-a, V (Supp. 1986). We affirm the board's ruling.

The taxpayers appeal the assessment of four undeveloped lots. The Town of Deerfield has classified all residential lots into five grades, taking into account a variety of factors related to dimension, topography, and soil quality. Each grade, or class, is assigned an assessment value. The town valued all class C lots at $10,000. The town classified the four lots involved in this appeal as class C lots, resulting in a total assessed value of $40,000. After the board of selectmen denied the taxpayers' application for an abatement, the taxpayers appealed to the board of tax and land appeals.

RSA 75:1 (Supp. 1986) requires, in pertinent part, that "the selectmen shall appraise all taxable property at its full and true value in money. . . ." The board received evidence of the sale price of two nearby lots similar in size to the taxpayers' lots, and found that the market value of an average lot of similar size to the taxpayers' lots on the 1984 assessment date was $20,600. The board then reached an assessed value for each of the four lots by applying the following formula: Value = $20,600 x .94 [the town-wide equalization ratio] x topographical depreciation percentage x .72 [an excess frontage factor]. Using this formula, the board calculated the following assessments:

| Lot B | $20,600 | x | .94 | x | .85 | x | .72 | = | $11,800 |
|-------|---------|---|-----|---|-----|---|-----|---|---------|
| Lot C | 20,600 | x | .94 | x | .75 | x | .72 | = | 10,450 |
| Lot D | 20,600 | x | .94 | x | .10 | x | .72 | = | 1,400 |
| Lot E | 20,600 | x | .94 | x | .90 | x | .72 | = | 12,550 |

Total Assessment     $36,250

The taxpayers argue that the board should have determined the proper assessed valuation by applying the depreciation and excess frontage percentages to the town's class C uniform valuation of $10,000, and order a corresponding abatement. Using this formula, the assessed value of the four lots would be $18,700, or $17,550 less than the figure calculated by the board, and $21,300 less than the amount assessed by the town. The taxpayers assert that the board's method assesses their property at a higher rate than all other Deerfield residential taxpayers, in violation of part I, article 12 and part II, article 5 of the New Hampshire Constitution and the equal protection clause of the fourteenth amendment to the United States Constitution.

■■ The board was correct in refusing to apply the depreciation and excess frontage factors to the uniform class valuation, for that would have counted those factors twice. On reconsideration, the board specifically found that the town incorporated "topographical and other depreciations" into the $10,000 uniform value applied to

the taxpayers' lots. On appeal, we are bound by statute to accept all of the board's findings of fact as final. RSA 76:16-a, V. More importantly, the board calculated the market value of the taxpayers' lots and multiplied each lot's value by the town-wide .94 equalization ratio. This is all the law affords any taxpayer: to have one's property taxed at the same rate as property is taxed in the town as a whole, and not in comparison to a class of similar property. This rule of proportionality was stated long ago in *Amoskeag Mfg. Co. v. Manchester*, 70 N.H. 200, 46 A. 470 (1899), and recently in *Appeal of Town of Sunapee*, 126 N.H. 214, 217, 489 A.2d 153, 155 (1985).

The taxpayers assert that the town's assessment system of five categories with uniform, fixed values assesses all land zoned for residential use at a rate far below the .94 ratio. The record amply affirms this assertion. The town's five-tiered scheme of assessment of residential land is not an individualized assessment of fair market value, as required by RSA 75:1 (Supp. 1986). Obviously, all assessments are normative, in that adjustments for each property's characteristics are made against a normative value. That, however, does not mean that all properties may be categorized. Categorization gives a single assessment value for each property in the range encompassed by a given category. Thus, for example, all class C lots are assessed at $10,000, regardless of whether their actual value is $9,001 or $11,000. Likewise a class A lot is valued at $14,000, regardless of its actual value, so long as the value is above $13,000. Additionally, the record reveals no basis for concluding that the town's choice of valuation for each class is related to the average fair market value for lots within the class. This disparity destroys the proportionality essential to a permissible fractional valuation system. *See Brock v. Farmington*, 98 N.H. 275, 278–79, 98 A.2d 162, 164 (1953). Thus, the town's scheme not only fails to assess the market value of each individual parcel, but the five group values also appear to be arbitrary.

▮ None of this, however, is of any use to the present taxpayers. The fact that the assessment method underassesses some properties and overassesses others does not relieve the present taxpayers of their obligation to pay their fair share of taxes. *Amoskeag Mfg. Co. v. Manchester, supra* at 205, 46 A. at 473. In Deerfield, in the year this tax was assessed, the taxpayers' fair share of assessed value was 94 percent of market value. *See Appeal of Whaland*, 122 N.H. 700, 702, 449 A.2d 1204, 1205 (1982). The board's use of that formula and its order of a corresponding abatement were entirely correct.

The present tax appeal challenges the board, rather than the town, because that litigation strategy serves the taxpayers' interest.

Thus, the appeal has not preserved a direct challenge to the town's scheme. Accordingly, at the present juncture, we do no more than affirm the board.

*Affirmed.*

All concurred.